No. 23-1078

_____

# In the United States Court of Appeals for the Eighth Circuit

_____

BRIAN J. DORSEY,

Appellant,

v.

DAVID VANDERGRIFF,

Appellee.

_____

On Appeal from the United States District Court for the
Western District of Missouri, Honorable Roseann A. Ketchmark

_____

**Brief of the Appellee**

_____

**ANDREW BAILEY**
Missouri Attorney General

Gregory M. Goodwin
Assistant Attorney General
Missouri Bar. No. 65929

Tyler A. Dodd
Rule 46B Law Student

Attorneys for Appellant

**THIS IS A CAPITAL CASE**

1

## Summary of the Case

Just two days before Christmas 2006, Brian Dorsey raped and murdered Sarah Bonnie and murdered Ben Bonnie, who were Dorsey's cousin and cousin-in-law, respectively. *Dorsey v. Vandergriff*, 30 F.4th 752, 754 (8th Cir. 2022). The Bonnies had done nothing more than take Dorsey in when drug dealers came to collect on Dorsey's drug debt. *Id.* After Dorsey pleaded guilty to the murders, a Missouri jury sentenced him to death. *Id.*

Dorsey has completed direct appeal, post-conviction relief, federal district court habeas review, Eighth Circuit habeas review, and petitioned for a writ of certiorari. Now, Dorsey seeks a federal court order directing the Warden to transport him for medical testing. But, as Dorsey concedes, this Court held that 18 U.S.C. § 3599 "does not permit the district court to compel state officials to act in furtherance of state clemency proceedings." *Tisius v. Vandergriff*, 55 F.4th 1153, 1155 (8th Cir. 2022). Further, the All Writs Act does not permit Dorsey's proposed motion. *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 821 (8th Cir. 2009). The Court should summarily affirm the district court under Local Rule 47B without oral argument.

2

# Table of Contents

Summary of the Case ................................................................. 2

Table of Authorities ................................................................. 4

Statement of the Issue .............................................................. 4

Statement of the Case .............................................................. 7

    The Parties Below .............................................................. 7

    Dorsey's Crime ................................................................ 7

    Relevant Procedural History .............................................. 13

Summary of the Argument ..................................................... 16

Argument .............................................................................. 18

  I.   The district court correctly applied this Court's precedent when it determined that it lacked authority to order the transportation of Dorsey under 18 U.S.C. § 3599 and 28 U.S.C. § 1651 .......................... 18

    A.   The district court lacked jurisdiction under 18 U.S.C. § 3599. 18

    1. Five circuits have held that 18 U.S.C. § 3599 only provides federal funding and does not establish federal jurisdiction. ........ 18

    2. The context of chapter 228 fails to establish federal jurisdiction. .............................................................................. 26

    B.   The district court lacked jurisdiction under the All Writs Act, 28 U.S.C. § 1651 .............................................................. 33

  II. This panel cannot overrule the *Tisius* panel decision, therefore *Tisius* controls and Dorsey's motion fails due to a lack of subject matter jurisdiction. ........................................................... 36

Conclusion ........................................................................... 37

Certificate of Compliance ...................................................... 38

Certificate of Service ............................................................ 38

Appellate Case: 23-1078    Page: 3    Date Filed: 05/01/2023 Entry ID: 5271166

# Table of Authorities

## <u>Cases</u>

*Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*,
    551 F.3d 812 (8th Cir. 2009) ...................................................... passim

*Badgerow v. Walters*,
    142 S. Ct. 1310 (2022) ........................................................................26

*Baze v. Parker*,
    632 F.3d 338 (6th Cir. 2011) ...................................................... passim

*Beatty v. Lumpkin*,
    52 F.4th 632 (5th Cir. 2022)........................................................ passim

*Bowles v. Desantis*,
    934 F.3d 1230 (11th Cir. 2019) .................................... 16, 18, 32

*Compart's Boar Store, Inc. v. United States*,
    829 F.3d 600 (8th Cir. 2016) ...............................................................32

*Dorsey v. Vandergriff*,
    30 F.4th 752 (8th Cir. 2022)....................................................... 2, 14

*Harbison v. Bell*,
    556 U.S. 180 (2009) .............................................................. 20, 21

*Home Depot U.S.A., Inc. v. Jackson*,
    139 S. Ct. 1743 (2019) ........................................................... 31, 32

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .............................................................................27

*Leavitt v. Arave*,
    682 F.3d 1138 (9th Cir. 2012) ....................................... 16, 18, 32

*Mays v. Bd. of Educ. of Hamburg School Dist.*,
    834 F.3d 910 (8th Cir. 2016) ......................................... 17, 36

*Shoop v. Twyford*,
    142 S. Ct. 2037 (2022) ............................................................ 33, 34

*State v. Dorsey*,
    318 S.W.3d 648 (Mo. 2010) .............................................................13

*Syngenta Crop Protection, Inc. v. Henson*,
    537 U.S. 28 (2002) ................................................................ 17, 33

*Tisius v. Vandergriff*,
    55 F.4th 1153 (8th Cir. 2022)..................................................... passim

*United States v. Bass*,
    404 U.S. 336 (1971) .............................................................................27

Appellate Case: 23-1078     Page: 4     Date Filed: 05/01/2023 Entry ID: 5271166

*United States v. Denedo,*
    556 U.S. 902 (2009) ........................................................................ 17, 33

## Statutes

18 U.S.C. § 3591 ......................................................................... 27, 28
18 U.S.C. § 3592 ......................................................................... 27, 28
18 U.S.C. § 3593 ......................................................................... 27, 28
18 U.S.C. § 3594 ............................................................................... 28
18 U.S.C. § 3595 ......................................................................... 28, 29
18 U.S.C. § 3596 ......................................................................... 28, 29
18 U.S.C. § 3597 ......................................................................... 28, 29
18 U.S.C. § 3598 ......................................................................... 28, 29
18 U.S.C. § 3599 ...................................................................... passim
28 U.S.C. § 1651 ...................................................................... passim

Appellate Case: 23-1078     Page: 5     Date Filed: 05/01/2023 Entry ID: 5271166

## Statement of the Issue

I.    The district court properly dismissed Brian Dorsey's ex parte motion because the district court lacked jurisdiction to order state prison officials to facilitate Dorsey's state clemency investigation. Dorsey asks this Court to reconsider and overrule its recent opinion in *Tisius v. Vandergriff*, 55 F.4th 1153 (8th Cir. 2022), which held that 18 U.S.C. § 3599 was a funding mechanism and did not give federal courts jurisdiction to order state prison officials to facilitate a prisoner's state clemency investigation. Additionally, the Fifth, Sixth, Ninth, and Eleventh Circuits have rejected similar statutory construction arguments of 18 U.S.C. § 3599. Finally, the All Writs Act, 28 U.S.C. § 1651, does not provide the relief Dorsey seeks. This Court should affirm the district court's denial of Dorsey's motion.

Most Apposite Cases:

> *Tisius v. Vandergriff*, 55 F.4th 1153 (8th Cir. 2022)
>
> *Beatty v. Lumpkin*, 52 F.4th 632 (5th Cir. 2022)
>
> *Baze v. Parker*, 632 F.3d 338 (6th Cir. 2011)
>
> *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812 (8th Cir. 2009)

6

## Statement of the Case

### *The Parties Below*

Appellee David Vandergriff is the Warden of Potosi Correctional Center, a prison in Potosi, Missouri, which houses Missouri inmates, including inmates who are sentenced to death. Warden Vandergriff supervises the custody of Brian Dorsey, who was sentenced to death for the murders of Sarah and Ben Bonnie. R. Doc. 46-19 at 1242.

### *Dorsey's Crime*

In 2006, just two days before Christmas, Sarah Bonnie (Dorsey's cousin) started the day by baking cookies and making a gingerbread house with her four-year old daughter, Jade, and Sarah's mother.[1] W App.[2] 160; R. Doc. 29-2, at 23. Jade was to spend the night with her grandparents. W. App. 160; R. Doc. 29-2, at 23. After they finished baking cookies and making the gingerbread house, Jade left with Sarah's mother. W. App. 160; R. Doc. 29-2, at 23. Between 3:00 p.m. and 6:30

---

[1] The Warden refers to Sarah Bonnie and Ben Bonnie by their first names only for the sake of clarity. The Warden refers to Jade by her first name in order to help protect her identity.

[2] W App. is the Warden's separate appendix consisting of the sentencing and post-conviction hearing transcripts. App. is appellant's appendix.

Appellate Case: 23-1078    Page: 7    Date Filed: 05/01/2023 Entry ID: 5271166

p.m., Dorsey asked Sarah, his cousin, for money and help because Dorsey owed money to drug dealers. W. App. 170, 174; R. Doc 29-2, at 33, 37. Ben, Sarah's husband, agreed to help Dorsey confront some drug dealers who were at Dorsey's apartment without permission. W. App. 174, R. Doc. 29-2, at 37. Sarah, Ben, and their friend went to Dorsey's apartment to help Dorsey. Id. Sarah and Ben stayed until the drug dealers left and then took Dorsey into their home to protect him. W. App. 170, R. Doc. 29-2, at 33. Before leaving the apartment, Sarah told Dorsey to gather Dorsey's dirty clothes and that Sarah would wash them for him. W. App. 170–71; R. Doc. 29-2, at 33–34. When Jade learned that Dorsey intended to spend the night at the Bonnies' home, Jade wanted to come home so she could see Dorsey. W. App. 160; R. Doc. 29-2, at 23. Sarah's mother brought Jade back home and then stayed for a while to visit. W. App. 161; R. Doc. 29-2, at 24. Other friends and family members joined in. W. App. 160; R. Doc. 29-2, at 23.

The women visited inside the house while the men, including Dorsey, went to the "shop" to drink beer and shoot pool. W. App. 161, 166–67, 175; R. Doc. 29-2, at 24, 29–30, 38. Before the men could shoot pool, they had to clean off the pool table. W. App. 167, 175; R. Doc. 29-2,

8

at 30, 38. Ben removed a single-shot 20-gauge shotgun from the pool table. W. App. 175; R. Doc. 29-2, at 38. The shotgun was Ben's first gun, a gift from his father. App. 225; R. Doc. 29-2, at 88. The shotgun was unloaded. W. App. 175; R. Doc. 29-2, at 38. Eventually, all the houseguests left, leaving Sarah, Ben, Jade, and Dorsey in the house.

After everyone went to bed, Dorsey retrieved the shotgun and shot Sarah in the lower right jaw. W. App. 204, 265; R. Doc. 29-2, at 67, 128. The force of the shotgun blast was so powerful that it separated Sarah's brain from her spinal cord, doing "massive damage to [her] brain." W. App. 204; R. Doc. 29-2, at 67. It was a "devastating injury." W. App. 205, 265; R. Doc. 29-2, at 68. Dorsey shot Ben in the head with the shotgun as well. W. App. 205; R. Doc. 29-2, at 68, 128. Ben's gunshot wound had gunpowder in it, proving that the wound was a "close-contact wound" where the gun was "pressed very close" to Ben's body. W. App. 205; R. Doc. 29-2, at 68. Dorsey then raped Sarah. W. App. 237; R. Doc. 29-2, at 100.

After murdering Sarah and Ben and then raping Sarah, Dorsey stole personal property, such as Sarah's old cell phone, Sarah and Ben's jewelry, two firearms, and Jade's copy of Bambi II. W. App. 165, 169, 211,

9

213, 224; R. Doc. 29-2, at 28, 32, 74, 76, 87. Dorsey used these items to try to repay his drug debt. W. App. 176–78; R. Doc. 29-2, at 39–41. Dorsey also stole Sarah's car. W. App. 159–60, 227; R. Doc. 29-2, at 22–23, 90. Dorsey could not take his own car because Ben, a mechanic, had been repairing Dorsey's car at Ben's expense, but the repairs were not finished. W. App. 159–60, 227; R. Doc. 29-2, at 22–23, 90.

On Christmas Eve, Sarah's mother received a phone call because Sarah, Ben, and Jade had not yet arrived for the Bonnie family gathering. W. App. 161; R. Doc. 29-2, at 24. Sarah's mother and father went to the Bonnies' home to check on them. W. App. 161; R. Doc. 29-2, at 24. When they entered the house, they found Jade sitting on the couch drinking chocolate milk and eating chips. W. App. 161; R. Doc. 29-2, at 24. Jade, who jumped up and was glad to see her grandparents, said that she could not wake up Sarah. W. App. 159, 161; R. Doc. 29-2, at 22, 24. After knocking and calling for Sarah and Ben, Sarah's father forced the bedroom door open and they discovered the bodies. W. App. 161–62; R. Doc. 29-2, at 24–25.

When law enforcement entered the bedroom, they noticed the smell of bleach coming from Sarah's body. W. App. 193; R. Doc. 29-2, at 56.

10

Sarah's mid-section and groin had a "pour pattern," which was revealed under an alternative light source. W. App. 194, 197; R. Doc. 29-2, at 57, 60. Sarah's body was examined and a rape kit was performed. W. App. 206; R. Doc. 29-2, at 69. Swabs were collected for DNA testing. W. App. 234; R. Doc. 29-2, at 97. Upon examination, those vaginal swabs screened positive for the presence of semen. W. App. 235; R. Doc. 29-2, at 98. The crime lab could not confirm that semen was present because of "chemical insults," which included "soap, detergent, cleansers and so forth." W. App. 235; R. Doc. 29-2, at 98. Sperm cells were detected. W. App. 235; R. Doc. 29-2, at 98. Dorsey could not be eliminated as the contributor of the DNA found on the vaginal swabs. W. App. 237; R. Doc. 29-2, at 100.

When Dorsey was interviewed by police officers, he confessed to the murders, telling officers they had the "right guy concerning the death of the Bonnies." W. App. 216; R. Doc. 29-2, at 79. Dorsey also had Sarah's social security card in his back pocket. W. App. 215; R. Doc. 29-2, at 78.

After the murder, Sarah's parents began raising Jade. W. App. 163; R. Doc. 29-2, at 26. Sarah's mother had to retire from working. W. App. 163; R. Doc. 29-2, at 26. Jade began attending counseling. W. App. 163;

R. Doc. 29-2, at 26. Sarah's mother described Jade's "nightmares and crying" as "just horrible." W. App. 163; R. Doc. 29-2, at 26.

Dorsey's experienced trial counsels advised him to plead guilty because, in one counsel's view, "the evidence of [Dorsey's] guilt was overwhelming" and that there was "a substantial chance of losing on murder first degree" and "a very substantial chance that [Dorsey] would receive the death penalty." W. App. 291; R. Doc. 29-11 at 588. Dorsey agreed with counsels' advice and pleaded guilty.

Dorsey then received jury sentencing, where his counsels determined the best strategy was for Dorsey to accept responsibility, for Dorsey to try to get credit for that acceptance from the jury, and for Dorsey to show to the jury that he "had some humanity in him." W. App. 292; R. Doc. 29-11, at 589. One trial counsel hoped to show to the jury that this murder was "an aberration for [Dorsey]; that [Dorsey] had a history of being a good person, that [Dorsey] had some things in him that a jury could connect to." W. App. 293; R. Doc. 29-11, at 595. In that trial counsel's experience, juries that returned life verdicts did so because of that kind of evidence. *Id.* Dorsey's other trial counsel explained that the trial strategy was "to present [Dorsey] as best we could, as sorry,

12

remorseful, deeply upset." W. App. 294; R. Doc. 29-11, at 731. At the sentencing, the prosecutor described trial counsel's closing argument as "a very eloquent plea for mercy." W. App. 282; R. Doc. 29-2, at 145.

Despite trial counsels' best efforts, the jury returned verdicts of death. W. App. 286; R. Doc. 29-2, at 149. The jury found seven aggravating circumstances, including that the murders were outrageously and wantonly vile, horrible, and inhuman, the murders were committed so Dorsey could steal, and that Dorsey raped Sarah. W. App. 286; R. Doc. 29-2, at 149.

### Relevant Procedural History

After his conviction and sentences of death, Dorsey appealed, and the Missouri Supreme Court affirmed Dorsey's convictions and sentences. *State v. Dorsey*, 318 S.W.3d 648 (Mo. 2010). The United Supreme Court denied certiorari review. *Dorsey v. Missouri*, 562 U.S. 1067 (2010). Dorsey then returned to state court and sought post-conviction relief, which the trial court denied. The Missouri Supreme Court affirmed the denial of post-conviction relief. *Dorsey v. State*, 448 S.W.3d 276 (Mo. 2014). Then Dorsey petitioned for federal habeas review, and the district court denied Dorsey's claims without granting a

13

certificate of appealability. An administrative panel of the Eighth Circuit granted a certificate of appealability, but after briefing and argument, the merits panel determined that Dorsey was not entitled to habeas relief. *Dorsey v. Vandergriff*, 30 F.4th 752, 760 (8th Cir. 2022). The United States Supreme Court denied certiorari review of Dorsey's habeas petition. *Dorsey v. Vandergriff*, 143 S. Ct. 790 (2023). Dorsey now awaits for an execution date from the Missouri Supreme Court.

*The District Court's Denial of Dorsey's Sealed, Ex Parte Motions*

Counsel for Dorsey filed an ex parte, sealed motion seeking that the Missouri Department of Corrections transport Dorsey to a medical facility to receive a magnetic resonance image (MRI) "in anticipation and support of clemency proceedings before Governor Parson. . ." App. 6; R. Doc. 116, at 1. The motion alleged that Dorsey was entitled to transportation for the MRI under to 18 U.S.C. § 3599, and 28 U.S.C. § 1651, the "All Writs Act." App. 6; R. Doc. 116, at 1.

The district court denied Dorsey's motion for these reasons. App. 1; R. Doc. 117, at 1. First, the court concluded its authority under § 3599, a funding statute, did "not authorize the Court to order the specific relief Petitioner requests." App. 3; R. Doc. 117, at 3. Then relying on this

14

Court's recent decision in *Tisius v. Vandergriff*, 55 F.4th 1153 (8th Cir. 2022), the district court determined that it was bound by the decision in *Tisius* and could not authorize the relief Dorsey sought. App. 4; R. Doc. 117, at 4.

Second, the district court concluded that it did not have the authority under 28 U.S.C. § 1651, the All Writs Act, to order the transportation of Dorsey. App. 4; R. Doc. 117, at 4. The district court reasoned that "the All Writs Act is not an independent source of authority under which the Court can act." App. 4; R. Doc. 117, at 4. Without authority under the All Writs Act, the court determined it could not order the transportation of Dorsey. App. 5; R. Doc. 117, at 5.

In sum, the district court held that neither 18 U.S.C. § 3599 alone, nor 28 U.S.C. § 1651 alone, nor both statutes together, authorized the district court to order Dorsey to be transported for the MRI. App. 5; R. Doc. 117, at 5. Simply put, the district court lacked jurisdiction and Dorsey failed to point to any other jurisdictional basis for the district court to grant the motion. App. 5; R. Doc. 117, at 5.

15

## Summary of the Argument

Brian Dorsey asks this Court to revisit and overrule the recent decision in *Tisius v. Vandergriff*, 55 F.4th 1153 (8th Cir. 2022), after the district court found that 18 U.S.C. § 3599 and 28 U.S.C. § 1651, the All Writs Act, did not give the district court jurisdiction to compel state officials to facilitate Dorsey's investigation for his impending state clemency request. The district court, relying on this Court's decision in *Tisius*, concluded that § 3599 was a funding statute, and did not allow for the actions Dorsey requested. App. 4; R. Doc. 117, at 4. Further, the district court found that the All Writs Act did not provide for an independent basis of subject matter jurisdiction. App. 5; R. Doc. 117, at 5. Without subject matter jurisdiction, the district court was powerless to grant Dorsey's motion. App. 5; R. Doc. 117, at 5. This Court should reject Dorsey's argument because § 3599 is a funding statute and does not provide jurisdiction for a district court to compel state actors to act in furtherance of a state clemency petition. Five federal circuit courts, including this Court have reached this conclusion. *See Tisius*, 55 F.4th at 1155; *Beatty v. Lumpkin*, 52 F.4th 632, 634 (5th Cir. 2022); *Bowles v. Desantis*, 934 F.3d 1230, 1240 (11th Cir. 2019); *Leavitt v. Arave*, 682 F.3d

1138, 1141 (9th Cir. 2012); *Baze v. Parker*, 632 F.3d 338, 343 (6th Cir. 2011). No circuit court has disagreed.

Further, Dorsey's argument that the context of 18 U.S.C. §§ 3591–3599 provides the district court with jurisdiction to order state officials to further a state clemency investigation fails because the plain language of the chapter does not clearly indicate that Congress intended federal courts to possess jurisdiction to order state actors to facilitate state clemency proceedings.

Additionally, Dorsey's argument that the All Writs Act creates jurisdiction fails because the Act alone does not create independent subject matter jurisdiction. *See United States v. Denedo*, 556 U.S. 902, 914 (2009); *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002); *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 821 (8th Cir. 2009). With § 3599 only being a funding statute, the All Writs Act does not create jurisdiction for the district court to act.

Finally, this panel is not at liberty to overrule the decision of the *Tisius* panel. *Mays v. Bd. of Educ. of Hamburg School Dist.*, 834 F.3d 910, 918 n.4 (8th Cir. 2016). Therefore, this Court's prior decision in *Tisius*

17

controls and defeats Dorsey's motion because the district court does not have jurisdiction to grant Dorsey's motion.

## Argument

This Court should summarily affirm the district court for two reasons. First, the district court's order faithfully applied this Court's precedent and correctly interpreted the statute. Second, this panel cannot overrule the opinion of the *Tisius* panel, issued just months ago.

**I. The district court correctly applied this Court's precedent when it determined that it lacked authority to order the transportation of Dorsey under 18 U.S.C. § 3599 and 28 U.S.C. § 1651.**

**A. The district court lacked jurisdiction under 18 U.S.C. § 3599.**

**1. Five circuits have held that 18 U.S.C. § 3599 only provides federal funding and does not establish federal jurisdiction.**

18 U.S.C. § 3599 is a funding mechanism and nothing more. *See, e.g.*, *Tisius*, 55 F.4th at 1155; *Beatty v. Lumpkin*, 52 F.4th 632, 634 (5th Cir. 2022); *Bowles v. Desantis*, 934 F.3d 1230, 1240 (11th Cir. 2019); *Leavitt v. Arave*, 682 F.3d 1138, 1141 (9th Cir. 2012); *Baze v. Parker*, 632 F.3d 338, 343 (6th Cir. 2011).

Contrary to this Court's on-point precedent and contrary to the decisions of four other federal circuit courts, Dorsey argues that § 3599

18

permits the district court to order state prison officials to facilitate his clemency investigation. App. Br. 8–9. Dorsey's argument fails to comprehend the existing law on § 3599 in that it is abundantly clear that this section allows for the appointment of counsel during the clemency process, *see* 18 U.S.C. § 3599(e), allows for the *funding* of certain services during the defendant's representation, *see id.* § 3599(f), but it does not allow the district court to order third-parties to facilitate a prisoner's investigation for their state clemency application. *Tisius*, 55 F.4th at 1155.

In *Tisius*, the defendant filed an ex parte, sealed motion requiring "the Warden to facilitate or transport Tisius to the hospital for medical testing in furtherance of his state clemency case." *Id.* at 1154. Tisius did not request funding for his treatment, and argued that 18 U.S.C. § 3599 permitted the district court to order the prison warden to transport him to the hospital for bone-lead level testing. *Id.* The district court granted the motion. *Id.* The State sought a stay of the order granting the motion in this Court, which this Court granted. *Id.*

Addressing the merits of Tisius's § 3599 argument, this Court held "that 18 U.S.C. § 3599 does not permit the district court to compel state

officials to act in furtherance of state clemency proceedings." *Id.* at 1155. Recognizing the United States Supreme Court's interpretation of § 3599 in *Harbison v. Bell*, 556 U.S. 180, 193 (2009), which reaffirmed that federally appointed counsel for capital defendants can continue to represent the defendant in state clemency proceedings, this Court reasoned that nothing in § 3599 or any of the case law interpreting § 3599 supported Tisius's proposition that the district court could order the warden to transport him for medical care in furtherance of his state clemency petition. *Id.* Ultimately, this Court concluded that "Section 3599's authorization for funding neither confers nor implies an additional grant of jurisdiction to order state officials to act to facilitate an inmate's clemency application." *Id.*

In *Beatty*, the United States Court of Appeals for the Fifth Circuit rejected a defendant's motion under § 3599 to "compel the Texas Department of Criminal Justice to unshackle his hands during expert evaluations that his counsel had scheduled for later in September." *Beatty*, 52 F.4th at 634. The Fifth Circuit concluded that "[s]ection 3599 does not allow a district court to provide the relief Appellant seeks because it is a funding law, not a law that grants federal courts authority

20

to oversee the scope and nature of federally funded legal representation." *Id.*

The Court reasoned that the plain language of § 3599(e) and § 3599(f) was clear. *Id.* The Court further reasoned that the section allows for counsel to spend money on experts or expert services. *Id.* at 635. But the Court rejected the appellant's reading of the statute that read the "word 'obtain' as authorizing courts to take any and every step that a prisoner may request related to the provision of expert services." *Id.* The Court characterized the appellant's argument as how "the law's enforcement ought to be structured" rather than "about the ordinary, semantic content of the law's words." *Id.* In particular, the Fifth Circuit was "not tasked with interpreting § 3599 in a way that it believe[d] [was] consistent with the policy outcome intended by Congress." *Id.* at 636 (quoting *Harbison*, 556 U.S. at 198 (Thomas, J., concurring in the judgment)). The Fifth Circuit fully rejected the prisoner's policy-intent based argument. *Id.* at 636.

Turning to the plain language of § 3599, the Court held that the plain language did not allow for a federal court to compel a state official "to disregard their prison-visitation procedures in connection with the

21

federal court's funding of expert services." *Id.* Specifically, the plain language allowed for counsel of an indigent client to find an expert and pay that expert. *Id.* It did not allow for "an independent enforcement mechanism" in the federal courts to remedy "the scope of the expert services provided to the prisoner with federal funds." *Id.*

Finally, the Court "rejected the prisoner's arguments that the language of section 3599 extends beyond merely allowing district courts to determine what services are 'reasonably necessary' and then to provide funds for those services." *Id.* at 637. Section 3599 was simply a funding mechanism. *Id.* at 634.

In *Baze*, the defendant argued that the district court had the authority under § 3599 to "order state prison officials to provide him with information that he can use in a state clemency proceeding." *Baze*, 632 F.3d at 341. Specifically, Baze argued that subsection (f) "empower[ed] the court to order third-party compliance with the attorneys' investigations." *Id.* at 342. The Sixth Circuit rejected this argument, finding that the statute allows for the court "to authorize, for purposes of compensation, an attorney to acquire an investigator's efforts—not his total success." *Id.* at 343. The statute did not "enable a court to order any

22

party that stands in the investigator's way to stand down." *Id.* The Court concluded that § 3599 "provides for nothing beyond th[e] funding power." *Id.*

Second, Baze argued that *Harbison* supports the proposition that "federal courts have the authority to enter orders that ensure the appointment of meaningful counsel and experts in state clemency proceedings." *Id.* (quoting Appellant's Br. at 15). The Sixth Circuit rejected this argument, finding that *Harbison* only stands for the proposition that "section 3599 provides for federally-funded counsel to represent defendants in state clemency proceedings." *Id. Harbison* assured federally-funded counsel is available to capital defendants in state clemency proceedings, not that the federal courts can take actions "to supervise the mechanics of a state clemency proceeding." *Id.*

In sum, *Baze* held that "the only jurisdictional power granted to the district court by section 3599 is the power to appoint attorneys and oversee the release of federal funds to those attorneys." *Id.* at 346. The district court was powerless to order state officials to act in furtherance of his state clemency proceedings. *Id.*

23

*Tisius*, *Beatty*, and *Baze* are dispositive of Dorsey's argument to this Court. Dorsey argues that the plain language in § 3599(f) including the phrases "furnishing of . . . other services," "funding services," and "obtaining services" allows for the district court to order the prison official to transport Dorsey for his MRI because "funding alone is not always sufficient to 'furnish' or 'obtain' reasonably necessary services." App. Br. 9. Dorsey's argument, masked as an argument over the plain text, is the purposivist argument rejected by Fifth Circuit in *Beatty*. *See* App. Br. 13. The *Beatty* Court rejected the appellant's reading of the statute that read the "word 'obtain' as authorizing courts to take any and every step that a prisoner may request related to the provision of expert services." *Beatty*, 52 F.4th at 635. Dorsey argues similarly that, under § 3599, "the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant . . ." App. Br. 9 (emphasis removed). Though not binding, the Fifth Circuit in *Beatty* persuasively refutes Dorsey's purposivist argument.

*Baze* entirely forecloses Dorsey's argument. Baze argued that 18 U.S.C. § 3599 and 28 U.S.C. § 1651 gave the district court jurisdiction to "order state prison officials to provide him with information that he can

24

use in a state clemency proceeding." *Baze*, 632 F.3d at 341. The Sixth Circuit held that § 3599 only "empowers a court to authorize, for purposes of compensation, an attorney to acquire an investigator's efforts—not his total success." *Id*. at 343. Section 3599 did not "enable a court to order any party that stands in the investigator's way to stand down." Here, Dorsey seeks the same relief that Baze sought: a district court order compelling state prison officials to facilitate his state clemency investigation. Section 3599 does not allow this.

Additionally, the Sixth Circuit rejected the *Harbison* argument Baze made. *Id.* at 344. Baze argued that *Harbison* allowed the federal courts to "take action to supervise the mechanics of a state clemency proceeding." *Id.* at 343. Since Baze's argument lacked textual support, and was contrary to the United States Supreme Court's holding in *Harbison*, the Sixth Circuit would "not infer a[] Congressional intent to interfere with state proceedings to such a remarkable extent." *Id.* Dorsey, in part, relies on *Harbison*, to argue that § 3599 deserves a broader reading to ascertain the purpose of the statute and that broader reading supports his motion. App. Br. at 10–13. The Sixth Circuit rejected this statutory construction argument. *Baze*, 632 F.3d at 343–34. This Court

25

should do the same. *See infra* section I.A.2. The Sixth Circuit rejected both of Baze's arguments, and the decision persuasively rejects Dorsey's similar arguments.

Finally, Dorsey's facts are indistinguishable from those in this Court's decision in *Tisius*. Just like *Tisius*, Dorsey seeks medical testing and is not requesting federal funding for it. *Tisius*, 55 F.4th at 1154; App. Br. 15. Dorsey, like *Tisius*, relies in part on 18 U.S.C. § 3599 as a jurisdictional hook for the district court to compel state officials to facilitate Dorsey's state clemency investigation. *Id*. This Court held that it was not a jurisdiction hook and the district court was powerless to grant Tisius's motion. *Tisius*, 55 F.4th at 1155. Dorsey's jurisdiction argument fails under this Court's precedent.

## 2. The context of chapter 228 fails to establish federal jurisdiction.

Dorsey further argues that reading the entirety of chapter 228 of Title 18, §§ 3591–3599, in context, provides the district court with jurisdiction to order state officials to further a state clemency investigation. App. Br. 13. This argument misses the mark.

A federal district court's jurisdiction must have a statutory basis. *Badgerow v. Walters*, 142 S. Ct. 1310, 1318 (2022). "And the jurisdiction

26

Congress confers may not be expanded by judicial decree." *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (internal quotation marks omitted); *see also Baze*, 632 F.3d at 341 ("federal courts must be reluctant to infer that Congress has expanded their jurisdiction."). Further, "[a] federal court's reluctance to infer jurisdiction is enhanced where an expansion of jurisdiction would implicate federalism concerns." *Baze*, 632 F.3d at 341 (citing *United States v. Bass*, 404 U.S. 336, 349 (1971). "Federalism concerns are particularly strong in criminal matters, and, absent a clear directive from Congress or the Constitution, a federal court should be loath to assume jurisdiction to interfere with state criminal proceedings, including postconviction proceedings." *Id.* at 341. Here, Dorsey's jurisdictional argument fails because there is neither a statutory basis nor can this Court expand federal court jurisdiction.

Sections 3591–3599 cover the application of the federal death penalty. *See* 18 U.S.C. §§ 3591–3599. Section 3591 covers when someone may be sentenced to death. *Id.* § 3591. Section 3592 codifies the mitigating and aggravating factors in a federal capital case. *Id.* § 3592. Section 3593 describes special proceedings in a federal capital case. *Id.*

27

§ 3593. Section 3594 covers the imposition of the death sentence by the district court. *Id.* § 3594. Section 3595 describes the appellate review process for federal death sentences. *Id.* § 3595. Section 3596 covers the implementation of the death penalty, including how the death sentence is to be carried out and who cannot be executed. *Id.* § 3596. Section 3597 provides that state facilities and employees may be used to carry out a federal death sentence. *Id.* § 3597. Section 3598 precludes the application of the federal death penalty against any person under the jurisdiction of an Indian tribal government. *Id.* § 3598.

What Dorsey misses in his context argument is that in each of the aforementioned sections, the plain language confirms that the provisions apply only to the federal death penalty, *not* to a state imposing the death penalty. *See, e.g., id.* § 3591 ("a defendant who has been found guilty of – an offense described in section 794 or section 2381 . . ."); *id.* § 3592(c)(1) (describing the aggravating factors for homicide referencing other sections of the federal criminal code); *id.* § 3593 ("If, in a case involving an offense described in section 3591 . . ."); *id.* § 3594 ("Upon a recommendation under section 3593(e) that the defendant should be sentenced to death or life imprisonment without possibility of release. .

28

."); *id* § 3595 ("The court of appeals shall address all substantive and procedural issues raised on the appeal of a sentence of death . . . and whether the evidence supports the special finding of the existence of an aggravating factor required to be considered under section 3592."); *id.* § 3596 ("A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence."); *id.* § 3597 ("A United States marshal charged with supervising the implementation of a sentence of death may use appropriate State or local facilities for the purpose, may use the services of an appropriate State or local official or of a person such an official employs for the purpose, and shall pay the costs thereof in an amount approved by the Attorney General."); *id.* § 3598 ("Notwithstanding sections 1152 and 1153, no person subject to the criminal jurisdiction of an Indian tribal government shall be subject to a capital sentence under this chapter for any offense the Federal jurisdiction for which is predicated solely on Indian country. . .").

The only provision that applies to a state imposing the death penalty is § 3599. The language in this section provides:

29

> Notwithstanding any other provision of law to the contrary, ***in every criminal action*** in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either before judgment; or after the entry of a judgment imposing a sentence of death but before the execution of that judgment; shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).

*Id.* § 3599(a)(1) (emphasis added). The plain language in this section clearly and unambiguously applies to anyone who is under a death sentence or may be subjected to a death sentence, whether in state or federal jurisdiction. Dorsey's reliance on § 3596 and § 3597 to show federal use of state facilities and personnel somehow creates federal jurisdiction for federal courts to intervene in a state clemency proceeding is a misnomer because the specific language in those sections applies only to the federal death penalty, whereas the language in § 3599 applies regardless if a state or federal death penalty is imposed.

The language throughout §§ 3591–3598 is clear in the operations of the federal death penalty. In no way did Congress clearly indicate its intent to create federal jurisdiction in those sections for a federal court to

30

order state officials to facilitate a state clemency request. And even looking at § 3599, Congress did not clearly intend for there to be federal court jurisdiction to order state officials to help in a state clemency investigation. As the Fifth Circuit in *Beatty* stated, the text in "sections 3599(e) and 3599(f) is clear." *Beatty*, 52 F.4th at 634. Relying on this clear language, the Fifth Circuit determined the phrase "authorize the defendant's attorneys to obtain such services," *see* 18 U.S.C. § 3599(f), could not be interpreted to authorize "courts to take any and every step that a prisoner may request related to the provision of expert services." *Beatty*, 52 F.4th at 635. Dorsey cannot claim that the word "obtain" or "furnish" in conjunction with funding in § 3599(f) creates jurisdiction. *See id.* at 635–36 ("Appellant's argument seems to be that when statutes authorize funding, they should also confer jurisdiction or provide a cause of action to determine the scope of all activities that are funded by the statute. However, we may not use policy in such a way to rewrite Congress's laws.").

Dorsey's argument that chapter 228's context creates federal jurisdiction is not persuasive. "Federal courts are courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746

(2019) (citations and alterations omitted). The United States Constitution limits "the character of the controversies over which federal judicial authority may extend," and lower federal courts are further constrained by statutory limits. *Id.* (citations and alterations omitted). Dorsey has failed to show that subject matter jurisdiction here is proper. *See, e.g., Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 604 (8th Cir. 2016) ("The plaintiff has the burden of proving subject matter jurisdiction.").

Five federal circuits have held that 18 U.S.C. § 3599 is a funding statute and nothing more. *Tisius*, 55 F.4th at 1155; *Beatty*, 52 F.4th at 634; *Bowles*, 934 F.3d at 1240; *Leavitt*, 682 F.3d at 1141; *Baze*, 632 F.3d at 343. Further, Dorsey fails to demonstrate that the context of chapter 228 creates subject matter jurisdiction for the federal court to order state officials to facilitate a state clemency investigation. Section 3599 fails to provide subject matter jurisdiction for Dorsey's requested testing, and the district court held this. App. 4; R. Doc. 117, at 4. This Court should affirm the district court's finding that it lacked subject matter jurisdiction under § 3599.

Appellate Case: 23-1078   Page: 32   Date Filed: 05/01/2023 Entry ID: 5271166

**B. The district court lacked jurisdiction under the All Writs Act, 28 U.S.C. § 1651.**

Dorsey, in the alternative, argues that his request for medical testing is supported by 28 U.S.C. § 1651, the All Writs Act. App. Br. 17. This argument fails because the All Writs Act does not supply the federal district court with independent federal subject matter jurisdiction. *Ark. Blue Cross & Blue Shield*, 551 F.3d at 821. *See also United States v. Denedo*, 556 U.S. 902, 914 (2009); *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002).

Dorsey attempts to argue that the United States Supreme Court's recent decision in *Shoop v. Twyford*, 142 S. Ct. 2037 (2022), supplies the federal district court with jurisdiction to grant the motion. App. Br. 17. In *Shoop*, the Supreme Court held that "[a] transportation order that allows a prisoner to search for new evidence is not 'necessary or appropriate in aid of' a federal court's adjudication of a habeas corpus action, 28 U.S.C. § 1651(a), when the prisoner has not shown that the desired evidence would be admissible in connection with a particular claim for relief." *Shoop*, 142. S. Ct. at 2046. Specifically, Dorsey argues that since this evidence will not be used in any § 2254 habeas proceeding as his has concluded, this somehow gives the federal district court

33

jurisdiction to grant his motion. App. Br. 18. This argument is directly contradictory to the United States Supreme Court's decisions in *Denedo* and *Syngenta Crop Protection, Inc.* and to this Court's decision in *Arkansas Blue Cross & Blue Shield*.

In these three cases, the Supreme Court and this Court have unambiguously stated that the All Writs Act does not give a federal court independent subject matter jurisdiction. Dorsey's distinction that *Shoop* only addressed the All Writs Act in the context of an investigation tied to a § 2254 claim does not matter because the district court would not have subject matter jurisdiction even if the action is brought to further a state clemency petition. And Dorsey cannot use the All Writs Act "to circumvent statutory requirements or otherwise binding procedural rules." *Shoop*, 142 S. Ct. at 2044. But that is exactly is what Dorsey is trying to do.

Dorsey's argument is further foreclosed by the Sixth Circuit's decision in *Baze*. *Baze* held the All Writs Act could not be used as a jurisdiction hook. *Baze*, 632 F.3d at 345. Baze argued that the All Writs Act "empower[ed] the district court to order KDOC to allow him to interview prison personnel and inmates." *Id.* Baze made that argument

34

by reading the Act in conjunction with § 3599. *Id.* In rejecting Baze's argument, the Sixth Circuit reasoned that the All Writs Act "does not provide federal courts with an independent source of jurisdiction to issue writs, but only with the authority to issue writs 'in aid of their respective jurisdictions.'" *Id.* (quoting 28 U.S.C. § 1651). Here, because § 3599 was held to be a funding mechanism, *id.* at 345, Baze's All Writs Act argument failed because the court did not have preexisting jurisdiction and Baze's request fell "outside the scope of the All Writs Act." *Id.* at 346. The All Writs Act must be used in "in aid of" some provision that has preexisting subject matter jurisdiction. *Id.*

Dorsey's All Writs Act argument suffers from the same fatal defect as Baze's. The district court here concluded that § 3599 did not provide jurisdiction for the relief sought by Dorsey since it was only a funding mechanism. App. 4; R. Doc. 117, at 4. Because that section did not provide jurisdiction for the district court to grant Dorsey's motion, the All Writs Act could not alone invoke jurisdiction or authority for the district to act. App. 5; R. Doc. 117, at 5. Specifically, the district court concluded that "unless the Court has some jurisdiction to act otherwise in the manner, the All Writs Act does not itself authorize the Court to act." App. 5; R.

Doc. 117, at 5. The district court correctly applied the law with the All Writs Act when it determined it did not have jurisdiction. This Court should find the same and affirm the district court's decision denying Dorsey's motion.

At bottom, Dorsey fails to show that the All Writs Act alone, or in conjunction with another statutory provision, provides jurisdiction for the district court to grant his motion. This is exactly what the district court found. App. 5; R. Doc. 117, at 5. This Court should affirm the district court's denial of Dorsey's motion.

## II. This panel cannot overrule the *Tisius* panel decision, therefore *Tisius* controls and Dorsey's motion fails due to a lack of subject matter jurisdiction.

Dorsey asks this Court to revisit and overrule this Court's recent decision in *Tisius v. Vandergriff*, 55 F.4th 1153 (8th Cir. 2022). App. Br. 2. This panel is not at liberty to overrule a decision of a prior panel. *Mays v. Bd. of Educ. of Hamburg Sch. Dist.*, 834 F.3d 910, 918 n.4 (8th Cir. 2016). Therefore, this Court's prior decision in *Tisius* controls and defeats Dorsey's motion because the district court does not have jurisdiction to grant Dorsey's motion. *Tisius*, 55 F.4th at 1155.

36

## Conclusion

For these reasons, the Court should summarily affirm the district court.

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

*/s/ Gregory M. Goodwin*
Gregory M. Goodwin
Assistant Attorney General
Missouri Bar. No. 65929

*/s/ Tyler A. Dodd*
Tyler A. Dodd
Rule 46B Law Student

P.O. Box 899
Jefferson City, MO 65102
Phone: (573) 751-7017
gregory.goodwin@ago.mo.gov

Attorneys for Appellee

37

## Certificate of Compliance

I certify that this document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(i) in that it contains 6,799 words excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 (size 14 Century Schoolbook font).

*/s/ Gregory M. Goodwin*
Assistant Attorney General

## Certificate of Service

I certify I filed this document and any attachments using the Court's CM/ECF system on April 28, 2023. Counsel for all other parties will be served electronically.

*/s/ Gregory M. Goodwin*
Assistant Attorney General

38